UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

CHARLOTTE SUMMERS,

    Plaintiff,

vs.                                                                 Civil Action No. 2:22-cv-00148

WEST VIRGINIA DEPARTMENT OF HOMELAND SECURITY,
WEST VIRGINIA STATE POLICE,
R. LINDSEY, Trooper, West Virginia State Police,
SUMMERS COUNTY COMMISSION,
SUMMERS COUNTY SHERIFF'S DEPARTMENT, and
D.A. LESTER, Summers County Deputy Sheriff,

    Defendants.

## FIRST AMENDED COMPLAINT

Plaintiff Charlotte Summers (the "Plaintiff") hereby files this First Amended Complaint against defendants the defendants named in the caption above. Plaintiff alleges and pleads as follows:

## PARTIES

1. Plaintiff Charlotte Summers (the "Plaintiff") is, and at all times relevant to this First Amended Complaint has been, a resident, citizen and domiciliary of Summers County, West Virginia.

2. Defendant West Virginia Department of Homeland Security (the "WVDHS") is a department or agency of the state of West Virginia. Its principal office is located in the state capitol complex, 1900 Kanawha Blvd., E., Building 1, Room W-400, Charleston, Kanawha County, West Virginia. Thus, the WVDHS is a resident, citizen and domiciliary of Kanawha County, West

Virginia. At the time of the incident complained of in this First Amended Complaint, the WVDHS was known as the West Virginia Department of Military Affairs and Public Safety.

3. Defendant West Virginia State Police ("WVSP") is an agency of the state of West Virginia and is part of the WVDHS. Its principal office is located at 725 Jefferson Road, South Charleston, Kanawha County, West Virginia. Thus, the WVSP is, and at all times relevant to this First Amended Complaint has been, a resident, citizen and domiciliary of the state of West Virginia. At the time of the incident complained of in this First Amended Complaint, the WVSP was an agency of the West Virginia Department of Military Affairs and Public Safety, which was the predecessor to the WVDHS.

4. Defendant R. Lindsey ("Trooper Lindsey") is, and at all times relevant to this First Amended Complaint has been, a resident, citizen and domiciliary of the state of West Virginia. Trooper Lindsey is named herein in his individual capacity. It is alleged herein that Trooper Lindsey was acting within the scope of his employment and under color of law at all times relevant to this First Amended Complaint.

5. Defendant Summers County Commission (the "SCC") is a political subdivision of the state of West Virginia. Its principal office is located in the Summers County Courthouse, 120 Ballengee Street, Suite 203, Hinton, WV 25951. Thus, the SCC is, and at all times relevant to this First Amended Complaint has been, a resident, citizen and domiciliary of the state of West Virginia.

6. Defendant Summers County Sheriff's Office (the "SCS") is an instrumentality of the SCC. Its principal office is located in the Summers County Judicial Annex, 123 Temple Street, Suite 100, Hinton, WV 25951. Thus, the SCS is, and at all times relevant to this First Amended Complaint has been, a resident, citizen and domiciliary of the state of West Virginia.

7. Defendant D.A. Lester ("Deputy Lester") is, and at all times relevant to this First Amended Complaint has been, a resident, citizen and domiciliary of the state of West Virginia. Deputy Lester is named herein in his individual capacity. It is alleged herein that Deputy Lester was acting within the scope of his employment and under color of law at all times relevant to this First Amended Complaint. Deputy Lester is, and at all times relevant to this First Amended Complaint has been, an employee of both the SCC and the SCS.

## JURISDICTION and VENUE

8. This Court has federal question subject-matter jurisdiction of this matter pursuant to the provisions of 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction of the state law claims made herein pursuant to 28 U.S.C. § 1367. This Court has personal jurisdiction over the defendants because they are residents, citizens and domiciliaries of the state of West Virginia, which is part of the United States.

9. Pursuant to 28 U.S.C. § 1391, venue of this legal action is proper with this Court because all of the defendants are subject to the Court's personal jurisdiction, all of the defendants reside in West Virginia, and the events or omissions giving rise to the claims contained herein occurred in the Southern District of West Virginia.

## FACTS

10. On or about March 31, 2020, Trooper Lindsey arrived at Plaintiff's property in Pence Springs, Summers County, West Virginia to arrest Plaintiff's son, David Summers.

11. According to Trooper Lindsey's criminal complaint (the "Criminal Complaint") against Plaintiff, Trooper Lindsey had a warrant for David Summers's arrest.

12. At the time of his arrest, David Summers was in an outbuilding on Plaintiff's property that was owned by Plaintiff.

13. Upon information and belief, Trooper Lindsey did not have a search warrant for Plaintiff's property, including her home and the outbuilding where Plaintiff's son was arrested.

14. Trooper Lindsey arrested David Summers without incident, handcuffed him, and placed him in his patrol car.

15. In the Criminal Complaint, Trooper Lindsey alleges that Plaintiff swore at him.

16. In the Criminal Complaint, Trooper Lindsey alleges that he returned to his patrol car and got into it after Plaintiff swore at him.

17. While in his patrol car, Trooper Lindsey alleges that Plaintiff threw an "aluminum screen door frame at his patrol car."

18. At the time of this incident on or about March 31, 2020, Plaintiff was 75 years old, slight, frail, and disabled in that she needed assistance to walk.

19. Defendant denies throwing an aluminum screen door frame at Trooper Lindsey's patrol car. There was no aluminum screen door frame on Plaintiff's property other than the one attached to the door frame, and had there been, Plaintiff would have been unable to pick it up or throw it.

20. Trooper Lindsey does not allege that Plaintiff hit his patrol car with the aluminum screen door frame or any other object.

21. Since Trooper Lindsey was in his patrol car, and he does not allege that any object struck his car or his person, he could not have been in reasonable apprehension of immediately receiving a violent injury.

22. By his own admission in the Criminal Complaint, Trooper Lindsey admits that instead of driving off with his arrestee, who was already in his patrol car, he exited the patrol car and approached Plaintiff.

23. Trooper Lindsey angrily approached Plaintiff and yelled at her, causing Plaintiff to have a reasonable apprehension of immediately receiving a violent injury. Trooper Lindsey assaulted Plaintiff due to her reasonable apprehension of immediately receiving a violent injury.

24. Trooper Lindsey had no good cause to get out of his patrol car and attempt to arrest Plaintiff. He had no search warrant for Plaintiff's property. He had no arrest warrant for Plaintiff. Plaintiff had committed no crime. Plaintiff denies using the language Trooper Lindsey alleged in the Criminal Complaint, but she had every right to tell Trooper Lindsey to get off her property as Trooper Lindsey alleges.

25. Plaintiff feared Trooper Lindsey due to his angry approach to her, and she retreated to her residence and entered it before Trooper Lindsey reached her. Trooper Lindsey admits this in the Criminal Complaint.

26. Trooper Lindsey unlawfully entered Plaintiff's home to arrest her.

27. Trooper Lindsey admits in the Criminal Complaint that he tased Plaintiff in the back in her own home, and she fell to the floor. By these actions, Trooper Lindsey battered Plaintiff.

28. Upon information and belief, in addition to tasing Plaintiff, Trooper Lindsey beat her and dragged her along the ground. Plaintiff also likely sustained some injuries from her fall after being tased.

29. Two Summers County deputy sheriffs arrived on the scene shortly after Trooper Lindsey's beating of Plaintiff. One of them arranged for the Summers County Emergency Medical Services ("EMS") to come to Plaintiff's home. However, rather than waiting on EMS to arrive, Trooper Lindsey and Deputy Lester picked Plaintiff up by the arms and dragged Plaintiff, who

was unconscious or semi-conscious, to a police cruiser where she was placed until EMS arrived and transported her to the hospital.

30. Plaintiff suffered severe injuries as a result of Trooper Lindsey's excessive force. Both of her eyes were blackened. Her nose was broken. Both legs and one arm sustained severe damage. One of her legs was ultimately amputated due to the injuries, and Plaintiff nearly lost her other leg.

31. Another West Virginia State Trooper, Trooper Ellison, went to the hospital with Plaintiff, and he issued her criminal citations for one count of obstructing an officer and two counts of assault on a government official. Those charges remain pending in the Magistrate Court of Summers County as of the date this First Amended Complaint is submitted with the motion to amend. Upon information and belief, Trooper Ellison was not present when Trooper Lindsey beat Plaintiff.

**COUNT I**

**UNREASONABLE SEARCH AND SEIZURE IN VIOLATION OF THE FOURTH AMENDMENT OF THE U.S. CONSTITUTION PURSUANT TO 42 U.S.C. § 1983**

**(Defendants Trooper Lindsey and Deputy Lester)**

32. For Count I of this First Amended Complaint, paragraphs 1-31 of this First Amended Complaint are incorporated by reference as though fully restated herein.

33. On or about March 31, 2020, Trooper Lindsey, under color of law, seized Plaintiff's son, David Summers, from an outbuilding located on Plaintiff's property and owned by Plaintiff.

34. On or about March 31, 2020, Trooper Lindsey and Deputy Lester, under color of law, seized Plaintiff after entering her home, as described in detail herein. During the encounter, Plaintiff was tased, handcuffed, beaten, dragged along the ground, and verbally abused. Upon

information and belief, Deputy Lester's part in this was entering Plaintiff's home to assist with dragging her to a police cruiser after she had been severely injured. All of these acts were against Plaintiff's will and without her consent.

35. David Summers, whom Trooper Lindsey had come to arrest, had already been arrested and was in Trooper Lindsey's custody inside his patrol car when Trooper Lindsey and Deputy Lester entered Plaintiff's home, seized her, and used excessive force against her.

36. Neither Trooper Lindsey nor Deputy Lester had a search warrant for Plaintiff's residence, outbuilding or any of her other property.

37. Neither Trooper Lindsey nor Deputy Lester had an arrest warrant for Plaintiff.

38. Plaintiff did not consent to the search and seizure of her home, outbuilding, person, or any other property, nor was her consent sought by Trooper Lindsey or Deputy Lester.

39. There were no exigent circumstances present that were sufficient to justify the warrantless entry of Plaintiff's home and outbuilding or the arrest of Plaintiff.

40. Absent consent or exigent circumstances, police may not enter the home of a third person to execute an arrest warrant for a suspect named therein without first obtaining a search warrant. *Steagald vs. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). Given that *Steagald* was decided in 1981, the law is well-settled and very clearly established.

41. Absent consent or exigent circumstances, police may not enter the home of a person to arrest that person without an arrest warrant. *Payton vs. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Given that *Payton* was decided in 1980, the law is well-settled and very clearly established.

42. The actions of Trooper Lindsey and Deputy Lester were objectively unreasonable, unlawful, unwarranted, and taken in violation of Plaintiff's clearly established procedural and

substantive rights, including her Fourth Amendment right to be free from unreasonable search and seizure.

43. The actions of Trooper Lindsey and Deputy Lester were willful, wanton, intentional, malicious, and done with a callous and reckless disregard for Plaintiff's Fourth Amendment right to be free from unreasonable search and seizure.

44. As a direct and proximate result of the actions of Trooper Lindsey and Deputy Lester, as described in detail herein, Plaintiff suffered actual harm and is entitled to damages, including but not limited to damages for expenses incurred, loss of income, substantial mental anguish, physical and mental pain and suffering, loss of consortium, emotional distress, aggravation, annoyance, inconvenience, and punitive damages.

**COUNT II**

**USE OF EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT OF THE U.S. CONSTITUTION PURSUANT TO 42 U.S.C. § 1983**

**(Defendants Trooper Lindsey and Deputy Lester)**

45. For Count II of this First Amended Complaint, paragraphs 1-44 of this First Amended Complaint are incorporated by reference as though fully restated herein.

46. Trooper Lindsey used excessive force against Plaintiff when he violently grabbed Plaintiff, a 75-year-old slight, frail and disabled woman, tased her in the back, allowed her to fall to the floor of her home, beat her, dragged her along the floor and ground, and verbally abused her, as alleged in detail herein.

47. Trooper Lindsey and Deputy Lester used excessive force against Plaintiff when, rather than wait on EMS, they entered Plaintiff's home, seized her, and dragged her to a police cruiser, as described in detail herein.

48. At the time this violent use of physical force was inflicted upon Plaintiff by Trooper Lindsey and Deputy Lester, no objectively reasonable police officer could have perceived Plaintiff as posing an immediate threat to the safety of the officer or anyone else. Plaintiff had retreated to her home and had her back turned to Trooper Lindsey when he grabbed her, tased her, and inflicted the punishment described in detail herein. Plaintiff was in varying stages of consciousness after being tased and suffering severe facial injuries, ranging from unconscious to barely conscious, when Trooper Lindsey and Deputy Lester dragged Plaintiff to the police cruiser. Plaintiff was also unarmed at all times.

49. To the extent Plaintiff was resisting Trooper Lindsey's violent assault, if at all, she had every right to do so. It is legal in West Virginia to resist an unlawful arrest so long as the person resisting uses only reasonable force that is necessary to allow her to escape. *State vs. Cox*, 2021 W. Va. LEXIS 5, 2021 WL 195295 (W.Va. 2021), *citing State vs. Gum*, 68 W. Va. 105, 69 S.E. 463 (1910). By his own admission, Trooper Lindsey had already arrested David Summers and had him in custody in his patrol car before he ever made contact with Plaintiff. Thus, Plaintiff did not interfere or obstruct Trooper Lindsey while he made that arrest. Trooper Lindsey also admitted that he had returned to his patrol car after making contact with Plaintiff, and that he got out of his patrol car and attempted the arrest of Plaintiff after she allegedly threw an aluminum screen door frame toward his car. Plaintiff denies throwing anything toward Trooper Lindsey's patrol car, but even had she done so, it would not constitute a crime because Trooper Lindsey could not possibly have had a reasonable apprehension of immediate violent injury. Trooper Lindsey should have just driven away. He was on Plaintiff's property illegally without a search warrant and admits that he had been asked to leave. Plaintiff denies swinging her cane at Trooper Lindsey

as he alleges in the Criminal Complaint, but had she done so, that would be reasonable force necessary to make her escape, which she did back to her house.

50. The Plaintiff was unarmed at the time she was subjected to violent physical force by Trooper Lindsey and Deputy Lester, and there was no reasonable basis for a belief that Plaintiff could have been armed.

51. At the time Plaintiff was attacked by Trooper Lindsey, Plaintiff had committed no crime, and Plaintiff was not resisting except to the extent she was retreating from an angry Trooper Lindsey to get back to her house.

52. Upon information and belief, Trooper Lindsey got out of his car for the sole purpose of punishing Plaintiff for what he deemed to be her disrespectful behavior toward him. Trooper Lindsey could have, and should have, simply driven away with his arrestee. The injuries Trooper Lindsey and Deputy Lester inflicted on Plaintiff were not necessary for the safety of Trooper Lindsey, Deputy Lester, or anyone else.

53. The actions of Trooper Lindsey and Deputy Lester were objectively unreasonable, unlawful, unwarranted, and taken in violation of Plaintiff's clearly established procedural and substantive rights, including her Fourth Amendment right to be free from having an excessive amount of physical force used against her.

54. The actions of Trooper Lindsey and Deputy Lester were willful, wanton, intentional, malicious, and done with a callous and reckless disregard for Plaintiff's Fourth Amendment right to be free from excessive force.

55. As a direct and proximate result of the actions of Trooper Lindsey and Deputy Lester, as described in detail herein, Plaintiff suffered actual harm and is entitled to damages, including but not limited to damages for expenses incurred, loss of income, substantial mental

anguish, physical and mental pain and suffering, loss of consortium, emotional distress, aggravation, annoyance, inconvenience, and punitive damages.

## COUNT III

## ASSAULT

**(Defendants WVDHS, WVSP and Trooper Lindsey)**

56. For Count III of this First Amended Complaint, paragraphs 1-55 of this First Amended Complaint are incorporated by reference as though fully restated herein.

57. When Trooper Lindsey exited his patrol car and angrily approached Plaintiff while yelling at her to place her hands behind her back even though she had committed no crime, as alleged in detail herein, Trooper Lindsey committed an act that placed Plaintiff in reasonable apprehension of immediately receiving a violent injury.

58. Defendants WVDHS and WVSP are vicariously liable for Trooper Lindsey's actions.

59. Trooper Lindsey's actions were willful, wanton, intentional, malicious, and done with a callous and reckless disregard for Plaintiff's rights.

60. As a direct and proximate result of the actions of Trooper Lindsey, as described in detail herein, Plaintiff suffered actual harm and is entitled to damages, including but not limited to damages for expenses incurred, loss of income, substantial mental anguish, physical and mental pain and suffering, loss of consortium, emotional distress, aggravation, annoyance, inconvenience and punitive damages. Plaintiff does not seek punitive damages against defendants WVDHS, WVSP, SCC or SCS, and she seeks compensatory damages against these four defendants only to the extent of their insurance coverage.

## COUNT IV

## BATTERY

## (All Defendants)

61. For Count IV of this First Amended Complaint, paragraphs 1-60 of this First Amended Complaint are incorporated by reference as though fully restated herein.

62. When Trooper Lindsey entered Plaintiff's home without a search warrant or arrest warrant, grabbed her, tased her in the back, beat her, and dragged her along the floor and ground, as alleged in detail herein, he unlawfully and intentionally made physical contact of an insulting or provoking nature to Plaintiff and unlawfully and intentionally caused physical harm to Plaintiff.

63. When Trooper Lindsey and Deputy Lester entered Plaintiff's home after she had been tased, beaten, handcuffed and verbally abused and dragged her along the ground to a police cruiser, as alleged in detail herein, they unlawfully and intentionally made physical contact of an insulting or provoking nature to Plaintiff and unlawfully and intentionally caused physical harm to Plaintiff.

64. Defendants WVDHS and WVSP are vicariously liable for Trooper Lindsey's actions.

65. Defendants SCC and SCS are vicariously liable to Deputy Lester's actions.

66. The actions of Trooper Lindsey and Deputy Lester were willful, wanton, intentional, malicious, and done with a callous and reckless disregard for Plaintiff's rights.

67. As a direct and proximate result of the actions of Trooper Lindsey and Deputy Lester, as described in detail herein, Plaintiff suffered actual harm and is entitled to damages, including but not limited to damages for expenses incurred, loss of income, substantial mental anguish, physical and mental pain and suffering, loss of consortium, emotional distress,

aggravation, annoyance, inconvenience and punitive damages. Plaintiff does not seek punitive damages against defendants WVDHS, WVSP, SCC or SCS, and she seeks compensatory damages against these four defendants only to the extent of their insurance coverage.

## COUNT V

## NEGLIGENT HIRING

### (Defendants WVDHS and WVSP)

68. For Count V of this First Amended Complaint, paragraphs 1-67 of this First Amended Complaint are incorporated by reference as though fully restated herein.

69. When defendants WVDHS and WVSP (collectively referred to as "Defendants" for this Count) hired Trooper Lindsey, they had the obligation to ensure that Trooper Lindsey had the proper psychological makeup to serve as a West Virginia state trooper. This includes, but is not limited to, ensuring that Trooper Lindsey is not easily angered, is not violent, is not easily personally offended, and takes seriously his duty to protect, rather than harm, the public.

70. Defendants had actual knowledge at the time they hired Trooper Lindsey that he did not have the proper psychological makeup to serve as a West Virginia state trooper, but they hired him anyway.

71. As a direct and proximate result of Defendants' negligence in hiring Trooper Lindsey, as described in detail herein, Plaintiff suffered actual harm and is entitled to damages, including but not limited to damages for expenses incurred, loss of income, substantial mental anguish, physical and mental pain and suffering, loss of consortium, emotional distress, aggravation, annoyance, and inconvenience. Plaintiff seeks compensatory damages against Defendants only to the extent of their insurance coverage.

## COUNT VI

## NEGLIGENT TRAINING

### (Defendants WVDHS and WVSP)

72. For Count VI of this First Amended Complaint, paragraphs 1-71 of this First Amended Complaint are incorporated by reference as though fully restated herein.

73. Defendants WVDHS and WVSP (collectively referred to as "Defendants" for this Count) owe a legal duty to Plaintiff and to the general population to ensure that their troopers always act lawfully and do not harm anyone without just cause. Defendants knew that Plaintiff would be within the zone of foreseeable risk that was created by the jurisdiction of its police department.

74. As part of its legal duty to Plaintiff, Defendants have the duty to properly train their employees so that they can perform their jobs as expected.

75. Defendants breached the duty they owed to Plaintiff to properly train Trooper Lindsey, due to the following illegal actions by Trooper Lindsey, as stated in detail herein, which indicate a lack of proper training:

    a. Arresting David Summers on Plaintiff's property without obtaining a search warrant.

    b. Entering Plaintiff's home to arrest her without an arrest warrant.

    c. Not leaving Plaintiff's property when he was told to do so.

    d. Escalating a situation to extreme violence when de-escalation could easily have been accomplished.

    e. Beating an unarmed, helpless, 75-year-old disabled woman causing serious bodily injury when he should know how to easily take a person such as Plaintiff into custody without incident.

    f. Falsely charging Plaintiff with crimes.

76. In failing to properly train Trooper Lindsey, Defendants violated clearly established law, statutes, policies and procedures of which a reasonable public official would have known.

77. As a direct and proximate result of Defendants' negligence in training Trooper Lindsey, as described in detail herein, Plaintiff suffered actual harm and is entitled to damages, including but not limited to damages for expenses incurred, loss of income, substantial mental anguish, physical and mental pain and suffering, loss of consortium, emotional distress, aggravation, annoyance, and inconvenience. Plaintiff seeks compensatory damages against Defendants only to the extent of their insurance coverage.

## COUNT VII

## NEGLIGENT RETENTION

### (Defendants WVDHS and WVSP)

78. For Count VII of this First Amended Complaint, paragraphs 1-77 of this First Amended Complaint are incorporated by reference as though fully restated herein.

79. Defendants WVDHS and WVSP (collectively referred to as "Defendants" for this Count) owe a legal duty to Plaintiff and to the general population to not retain an employee who, through his or her acts or omissions, might cause harm to other persons.

80. Defendants owed a legal duty to Plaintiff in that they knew that Plaintiff would be within the zone of foreseeable risk that was created by the jurisdiction of Defendants' police department.

81. Defendants breached the duty that they owed to Plaintiff by failing to use a reasonable standard of care in retaining Trooper Lindsey as a West Virginia state trooper.

82. Upon information and belief, Trooper Lindsey has been employed by Defendants for a short period of time.

83. Upon information and belief, there have been other legitimate complaints made to Defendants about Trooper Lindsey prior to his contact with Plaintiff on or about March 31, 2020.

84. Defendants breached their duty to Plaintiff by failing to conduct any supervision or quality control of Trooper Lindsey's performance. Defendants further breached their duty by failing to adequately investigate prior complaints about Trooper Lindsey's performance and actions.

85. Had Defendants exercised even the minimal supervision over Trooper Lindsey, they would have either corrected his performance or terminated his employment long before he caused harm to Plaintiff.

86. It was unreasonable for Defendant to retain Trooper Lindsey in light of information that it knew or should have known regarding his performance.

87. As a direct and proximate result of Defendants' negligence in retaining Trooper Lindsey, as described in detail herein, Plaintiff suffered actual harm and is entitled to damages, including but not limited to damages for expenses incurred, loss of income, substantial mental anguish, physical and mental pain and suffering, loss of consortium, emotional distress, aggravation, annoyance, and inconvenience. Plaintiff seeks compensatory damages against Defendants only to the extent of their insurance coverage.

## **REQUEST FOR JUDGMENT, DAMAGES AND OTHER RELIEF**

**WHEREFORE**, Plaintiff respectfully requests judgment, damages and other relief against the defendants as follows:

1. Compensatory and general damages in an amount to be determined by the jury or other trier of fact at trial and to be limited with regard to defendants WVDHS, WVSP, SCC and SCS to the extent of their insurance coverage;

2. Punitive damages against Trooper Lindsey and Deputy Lester only in an amount to be determined by the jury or other trier of fact at trial;

3. Attorneys' fees and all costs incurred by Plaintiff in pursuing this action;

4. Pre-judgment and post-judgment interest as permitted by law; and

5. Such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

CHARLOTTE SUMMERS,

Plaintiff,

BY COUNSEL:

/s/ Mark Burnette
_____
W. Mark Burnette
West Virginia Bar No. 6408
MARK BURNETTE, P.A.
Post Office Box 2913
Ocala, Florida 34478
T:  (352) 512-9807
E:  mark@burnettelegal.com