IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CHARLOTTE SUMMERS,

        Plaintiff,

v.                                                      CIVIL ACTION NO. 2:22-cv-00148

WEST VIRGINIA DEPARTMENT
OF HOMELAND SECURITY, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *Defendants Summers County Commission, Summers County Sheriff's Department, and D.A. Lester's Motion to Dismiss* (Document 20), the accompanying *Memorandum in Support of Defendants Summers County Commission, Summers County Sheriff's Department, and D.A. Lester's Motion to Dismiss* (Document 21), the *Plaintiff's Response in Opposition to Motion to Dismiss Filed by Defendants Summers County Sheriff's Department, Summers County Commission, and Deputy D.A. Lester* (Document 22), the *Reply Memorandum in Support of Defendants Summers County Commission, Summers County Sheriff's Department, and D.A. Lester's Motion to Dismiss* (Document 24), and Plaintiff's *First Amended Complaint* (Document 13) (hereinafter FAC). For the reasons stated herein, the Court finds that the Defendants' motion to dismiss should be granted in part and denied in part.

**FACTUAL ALLEGATIONS**

The Plaintiff, Charlotte Summers, initiated this action with a *Complaint* (Document 1) filed on February 27, 2022. She named the West Virginia Department of Homeland Security

(WVDHS), the West Virginia State Police (WVSP), and Trooper R. Lindsey of the West Virginia State Police as Defendants. Ms. Summers subsequently moved to amend to add parties, correct allegations in the wake of discovery, and make typographical corrections. The Court granted her motion, and she filed her FAC. In addition to the original three Defendants, Ms. Summers named the Summers County Commission, the Summers County Sheriff's Department, and D.A. Lester. The allegations contained in her FAC are the following:

On March 31, 2020, Trooper Lindsey arrived at Ms. Summers' home to arrest her son, David Summers, who was in an outbuilding on the Plaintiff's property. Trooper Lindsey only possessed an arrest warrant for Mr. Summers. He did not possess a search warrant for Ms. Summers' home or property. The arrest occurred without incident, and Trooper Lindsey handcuffed Mr. Summers and placed him in his patrol car. As Trooper Lindsey was going to his patrol car, Ms. Summers exited her home and told him to get off her property. Then, unprompted, Trooper Lindsey exited his patrol car and began walking toward Ms. Summers while angrily yelling at her. Out of fear, Ms. Summers retreated into her house, where Trooper Lindsey followed her.

While in her home, Trooper Lindsey tased Ms. Summers in the back, which caused her to fall to the floor. While on the floor, Trooper Lindsey "beat [the Plaintiff] and dragged her along the ground." (*First Am. Compl.* at ¶ 28.) After Trooper Lindsey beat the Plaintiff, two Summers County deputy sheriffs arrived. One of them, Deputy Lester, aided Trooper Lindsey in picking Ms. Summers "up by the arms" and helped drag her to a police cruiser. (*Id.* at ¶ 29.) Due to the tasing, beating, and dragging, the Plaintiff suffered severe injuries including blackened eyes, a broken nose, and ultimately, an amputated leg.

In the hospital, Ms. Summers was issued a criminal citation including one count of obstructing an officer and two counts of assault on a government official. In the Criminal Complaint, Trooper Lindsey's version of events varies greatly from Ms. Summers'. He claimed that she swore at him and threw an aluminum door frame at his patrol car while he was in it. (*Id.* at ¶¶ 16–17.) When the FAC was filed, Ms. Summers' criminal charges were pending in the Magistrate Court of Summers County.

The FAC contains seven counts. Count One alleges unreasonable search and seizure in violation of the Fourth Amendment, under 42 U.S.C. § 1983, against Defendants Troper Lindsey and Deputy Lester. Count Two alleges excessive force in violation of the Fourth Amendment, under 42 U.S.C. § 1983, against Defendants Trooper Lindsey and Deputy Lester. Count Three asserts a state law claim for assault against Defendant Trooper Lindsey, and against Defendants WVDHS and WVSP under a theory of vicarious liability. Count Four asserts a state law claim for battery against Trooper Lindsey and Deputy Lester, and Defendants WVDHS, WVSP, the Summers County Commission, and the Summers County Sheriff's Department under a theory of vicarious liability. Counts Five, Six, and Seven are state law claims against Defendants WVDHS and WVSP, specifically sounding in negligent hiring, negligent training, and negligent retention, respectively. Ms. Summers seeks compensatory damages, punitive damages against Trooper Lindsey and Deputy Lester, attorney fees and costs, and pre- and post-judgment interest.

**STANDARD OF REVIEW**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading. *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521

F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a complaint must contain more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements." *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal,* 556 U.S. at 679. Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

4

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570). A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557). "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

**DISCUSSION**

Three of the six Defendants now move to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Their arguments focus on their individual roles and the Court will address the claims and arguments as to each of the three Defendants.

*A. Defendant Summers County Sheriff's Department*

Defendant Sheriff's Department argues that it is not a distinct legal entity capable of being sued. The Defendant cites a long line of cases holding that the sheriff departments of West Virginia's counties are not capable of being sued because sheriff departments are not distinct legal entities separate from their respective county commissions or councils. *See Pulse v. Layne,* Civil Action No. 3:12-CV-70, 2013 U.S. Dist. LEXIS 4622, 2013 WL 142875 at *4 (N.D.W. Va., Jan. 11, 2013) (Groh, J.); *see also Rankin v. Berkeley County Sheriff's Dep't,* 222 F.Supp.2d 802, 807 (N.D.W.Va. 2002) (Broadwater, J.), *Frederick v. W. Va. HHS,* Case No. 2:18-cv-01077, 2019 U.S.

Dist. LEXIS 41524,*n.26 (S.D.W.Va., Feb. 15, 2019) (Tinsley, M.J.), adopted 2019 U.S. Dist. LEXIS 40409 (Mar. 13, 2019) (Johnston, C.J.); *Zsigray v. Cnty. Comm'n of Lewis Cnty.*, Civil Action No. 2:16-CV-64, 2017 U.S. Dist. LEXIS 14699, *2 (N.D.W.Va., Feb. 2, 2017) (Groh, J); *Tomashek v. Raleigh Cty. Emergency Operating Ctr.*, Civil Action No. 2:17-cv-01904, 2018 U.S. Dist. LEXIS 10521, 2018 WL 522420, *8 (S.D.W.Va., Jan. 23, 2018) (Goodwin, J.) (quoting *Webb v. Raleigh Cty. Sheriff's Dep't*, No. 5:09-cv-01253, 2010 U.S. Dist. LEXIS 97245, 2010 WL 3702648, at *7 (S.D.W.Va. Sept. 16, 2010) (Berger, J.).

The Plaintiff respectfully conceded this argument and does not dispute the legal grounds upon which it rests. Accordingly, the dismissal of Defendant Summers County Sheriff's Department is appropriate.

*B. Defendant Summers County Commission*

Defendant County Commission argues that it is statutorily immune from the Plaintiff's battery claim. Specifically, W. Va. Code § 29-12A-4(c) provides that, unless stated otherwise, political subdivisions are not "liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function." The largest exception is a political subdivision's liability for damages "caused by the negligent performance of acts by their employees while acting within the scope of employment." W. Va. Code § 29-12A-4(c). Notably, the statute does not expressly create liability for intentional or willful acts of the political subdivision's employees.

The Plaintiff does not dispute the grant of statutory immunity to the Defendant, nor does she dispute its preclusion of a battery claim against the Defendant County Commission.[1] In response, the Plaintiff requests that "any dismissal of the Summers County Commission be without prejudice in the event discovery shows that a claim for negligence can be made against . . . the [County Commission]." (Pl. Resp. at 4.) The Defendant, in turn, argues that any dismissal should be "with prejudice." (Def. Reply at 3–4.)

Questions of sovereign immunity are "jurisdictional in nature." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *see also J.C. Driskill, Inc. v. Abdnor*, 901 F.2d 383, 385 n. 4 (4th Cir.1990) ("Waiver of sovereign immunity is a jurisdictional prerequisite in the nature of, but not the same as, subject matter jurisdiction, in that unless sovereign immunity be waived, there may be no consideration of the subject matter."). Therefore, because West Virginia's statutory waiver of sovereign immunity does not cover the Plaintiff's claim, the Plaintiff's battery claim against the County Commission is dismissed for want of jurisdiction. Under Rule 41(b) of the Federal Rules of Civil Procedure, dismissal for lack of jurisdiction does not operate as an adjudication on the merits. Otherwise put, it operates as dismissal without prejudice. *See, e.g.*, *Krekelberg v. City of Minneapolis*, 991 F.3d 949, 955 (8th Cir. 2021) ("The phrase 'adjudication on the merits' in Rule 41(b) means 'with prejudice.'"). Accordingly, the dismissal without prejudice is appropriate for the Plaintiff's battery claim against Defendant Summers County Commission.[2]

---

[1] Additionally, the Plaintiff does not argue that there is an applicable exception falling under the catchall provision listed in W. Va. Code § 29-12A-4(c)(5).
[2] Even in the alternative where the claim is dismissed with prejudice, it would create little difference in outcome. Such a dismissal would only cover the Plaintiff's *battery* claim, not any subsequent claim sounding in negligence.

7

### C. Defendant Deputy Lester

Of the moving Defendants, only Defendant Deputy Lester remains unaddressed. Deputy Lester argues that claims against him should be dismissed because the statute of limitations has run, or, in the alternative, that he is entitled to qualified immunity.

### (1) Statute of Limitations

The Defendant argues that the statute of limitations expired on March 31, 2022, two years after the events detailed in the FAC, which was filed on July 15, 2022. The Defendant also argues that the discovery rule or similar doctrines are inapplicable because the Plaintiff was "present for the actions which allegedly form the basis of her Complaint and [FAC]" and therefore "obviously knew the relevant information" regarding her claim against Deputy Lester. (Def. Br. at 6.) Additionally, the Defendant points to the publicly available Criminal Complaint which names Deputy Lester. The Plaintiff responds that her claim against Deputy Lester arises from her discovery that she was dragged from her home to the police cruiser by Trooper Lindsey *and* Deputy Lester, not the discovery of Deputy Lester's presence that day. Ms. Summers alleges that the reason she did not know she was dragged was because she was unconscious or semi-conscious from the tasing and beating effectuated by Trooper Lindsey.

Under the Federal Rules of Civil Procedure, a statute of limitations defense is an affirmative defense and "the burden of establishing an affirmative defense rests on the defendant." *Goodman v. PraxAir, Inc.*, 494 F.3d 458, 464 (4th Cir.2007). A motion under Rule 12(b)(6) is not generally intended "to address the merits of any affirmative defenses," but rather "to test the legal adequacy of the complaint." *Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993). However, "the defense may be reached by a motion to dismiss filed

under Rule 12(b)(6) . . . if all facts necessary to the affirmative defense *clearly* appear on the face of the complaint." *Id.*; *Brooks v. City of Winston Salem*, 85 F.3d 178, 181 (4th Cir. 1996) (emphasis added). Therefore, even if the claim appears time-barred, the plaintiff's invocation of the discovery rule or equitable tolling generally makes dismissal inappropriate. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 465–66 (4th Cir. 2007), *see also Mearin v. Vidonish*, CIV.A. 08-597, 2009 WL 5166258, at *3 (W.D. Pa. Dec. 29, 2009); *Rodriguez Serra v. Matias Photo Shop*, 21 F.R.D. 188 (D.P.R. 1957). The invocation of the discovery rule will normally preclude dismissal unless it is the "unusual case where a claim is filed *clearly* beyond the applicable limitations period *and* the plaintiff seeks to forestall its dismissal by alleging the facts of discovery." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464–66 (4th Cir. 2007) (emphasis added).

Although the applicable state statute of limitations supplies the length of the limitations period in a § 1983 action, the time of accrual of the cause of action is a matter of federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). "Under those principles, it is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action." *Id.* In short, the statute of limitations clock starts when the plaintiff knows or has reason to know upon reasonable inquiry "that he has been hurt and who inflicted the injury." *Nasim v. Warden, Md. House of Correction*, 64 F.3d 951, 955 (4th Cir.1995) (en banc), cert. denied, 516 U.S. 1177 (1996).

Viewing the allegations in the complaint as true, it cannot be said that the complaint is clearly time-barred. Although the statute of limitations ran on March 31, 2022, the Plaintiff asserts that the period is tolled by the discovery rule. She states that she was "unconscious or semi-conscious" when Deputy Lester entered her home and aided Trooper Lindsey in dragging her to a police cruiser. (*FAC* ¶ 29.) Her lack of consciousness is plausible given that the

9

Plaintiff, alleged to be slight and frail, claims she had been tased and beaten before the arrival of Deputy Lester. Giving the Plaintiff the benefit of reasonable inferences drawn from the alleged facts, Ms. Summers could have been unaware of Deputy Lester's assault because she was unconscious and had been severely beaten by one assailant, making it difficult to know she was ever harmed by a second assailant.[3] From this allegation, a reasonable inference exists that Ms. Summers filed her FAC within the statute of limitations as tolled by the discovery rule. Thus, the Court finds that the action is not clearly time-barred on the face of the complaint, making dismissal on that ground inappropriate at this stage of the proceeding.

### (2) Qualified Immunity

Lastly, Deputy Lester argues that he is entitled to qualified immunity as to Count I of the FAC—unreasonable search and seizure in violation of the Fourth Amendment. Specifically, Deputy Lester argues that his actions were covered by the "community caretaker doctrine" and even if his actions fall outside the letter of the doctrine, it was not a violation of a clearly established rule. (Def. Br. at 11–12.) The Plaintiff responds by arguing that entering a home without a warrant *and then* using excessive force amounts to a constitutional violation not subject to qualified immunity. However, the Plaintiff's response is overly broad. Deputy Lester has not asserted qualified immunity for the alleged excessive force or battery claims, rather it is asserted only as to Count I, Deputy Lester's warrantless and unreasonable entry of the Plaintiff's home.[4]

---

[3] The Defendant argues that the publicly available Criminal Complaint mentions Deputy Lester by name, and therefore Ms. Summers knew of her claim against him. This argument ignores that the Plaintiff needed to know not only that another person was present at her home after she was unconscious, but she also needed to know that she was injured by a second assailant. The Defendant's euphemistic statement that "Deputy Lester and Tpr. Lindsey *escorted* Mrs. Summers" does little in the way of notifying her that they dragged her across the ground while unconscious.

[4] The Plaintiff's Count I and Count II could be read as duplicative of one another. A seizure using excessive force in effectuating an arrest (Count II) would be an unreasonable seizure in violation of the Fourth Amendment (Count I). However, because the allegations stated in Count I of the FAC focused particularly on the entry and search of the Plaintiff's home, the Court will treat it as merely a claim of an unreasonable search in violation of the Fourth

Qualified immunity is an affirmative defense intended to shield public officials from civil suits arising out of their performance of job-related duties. *See, e.g., Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009). Defendants asserting a qualified immunity defense first bear the burden of "demonstrating that the conduct of which the plaintiff complains falls within the scope of the defendant's duties." *In re Allen*, 106 F.3d 582, 594 (4th Cir. 1997) (internal quotation marks omitted.) The defense of qualified immunity is available unless the official "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff." *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982) (internal emphases omitted). Officials are protected even if they make reasonable mistakes of fact or law, so long as they do not violate a clearly established statutory or constitutional right. *Pearson*, 555 U.S. at 231–32. "A constitutional right is 'clearly established' when its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013) (internal quotation marks and citations omitted).

Courts are advised to "ask first whether a constitutional violation occurred and second whether the right violated was clearly established."[5] *Id.* The reasonableness analysis is objective. Courts must "examine[] only the actions at issue and measure[] them against what a reasonable police officer would do under the circumstances," but the inquiry "must be filtered through the lens of the officer's perceptions at the time of the incident." *Rowland v. Perry*, 41 F.3d 167, 172-73 (4th Cir. 1994). "[T]he officer's subjective state of mind is not relevant to the

---

Amendment.

[5] "Courts are 'permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Smith v. Ray*, 781 F.3d 95, 106, n. 3 (4th Cir. 2015) (citing *Pearson v. Callahan,* 555 U.S. 223, 236 (2009)).

11

qualified immunity inquiry but his perceptions of the objective facts of the incident in question are." *Id.* at 173.

The Fourth Amendment protects people, and their "houses, papers, and effects" against "unreasonable searches or seizures." U.S. Const. amend. IV. "As that text makes clear, 'the ultimate touchstone of the Fourth Amendment is 'reasonableness.''" *Lange v. California*, 141 S. Ct. 2011, 2017 (2021) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). Intrusions into private residences are subject to particular scrutiny, and "searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980). The Fourth Amendment "prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." *Id.* at 576. However, "the warrant requirement is subject to certain exceptions." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006).

The Defendant relies on the "community caretaker" exception. This exception to the warrant requirement "allows officers who are serving as 'community caretakers,' protecting the safety of persons or property, to make warrantless searches." *See U.S. v. Gillespie*, 332 F. Supp. 2d 923, 929 (W.D. Va. 2004) (citing *Phillips v. Peddle*, 7 Fed. Appx. 175, 178 (4th Cir.2001)). The exception requires that the purpose of the search or seizure must be "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). Otherwise put, to be eligible for the community caretaker exception, the caretaking must not be pretextual or done in bad faith. *U.S. v. Johnson*, 410 F.3d 137, 145 (4th Cir. 2005); *U.S. v. Gwinn*, 219 F.3d 326, 335 (4th Cir. 2000).

Additionally, the logic of the community caretaker exception was tied directly to rendering aid to motor vehicles, not homes. *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973). Thus, the Supreme Court has recently stated in unequivocal terms that the community caretaker doctrine does not justify a warrantless entry into the home. *Caniglia v. Strom*, 209 L. Ed. 2d 604 (May 17, 2021). Even before *Caniglia*, the Supreme Court had never applied the community caretaking doctrine to justify the warrantless entry into a home. *U.S. v. Gillespie*, 332 F. Supp. 2d 923, 929 (W.D. Va. 2004); *Wood v. Commonwealth*, 27 Va. App. 21, 497 S.E.2d 484, 487 (1998).

However, Deputy Lester's alleged violation occurred before the Supreme Court's opinion in *Caniglia*, which does leave him the opportunity to argue that his qualified immunity defense is intact due to the law not being "clearly established" at the time of the violation. But the Court need not address that line of hypothetical argument.[6] As stated above, at the time of Deputy Lester's conduct, it was clearly established that the community caretaker exception requires an absence of pretext and bad faith, and the sole purpose of caretaking. Viewing the Plaintiff's allegations as true, the purpose of Deputy Lester's entry into her home was to "assist with dragging her to a police cruiser after she had been severely injured." (FAC ¶ 34.) The Plaintiff does not allege these actions were done by mistake or misunderstanding, but rather the actions were done intentionally and maliciously. (FAC ¶ 44.) Nowhere does the Plaintiff allege that Deputy Lester entered with the purpose to render medical aid or to protect the Plaintiff's safety, rather, the opposite is alleged. The plausibility of the Plaintiff's claim that Deputy Lester lacked a legitimate community caretaking function is bolstered by the allegation that Emergency Medical Services had been called, and Deputy Lester entered the home to drag Ms. Summers regardless. After

---

[6] Both the Plaintiff and the Defendant failed to mention *Caniglia* or argue its impact on this case.

entering the home, the Plaintiff alleges that Deputy Lester increased her injuries by maliciously dragging her out of the home, rather than providing any aid. These inferences put Deputy Lester's alleged purpose clearly outside of community caretaking, making his alleged entry a violation of Ms. Summers' Fourth Amendment rights.

The Defendant also seemingly blurs the line between the community caretaking exception and the exigent circumstances exception.[7] However, the exigent circumstances exception to the warrant requirement does not apply when the police "gain entry to premises by means of an actual or threatened violation of the Fourth Amendment." *Kentucky v. King*, 563 U.S. 452, 469 (2011). Even assuming Deputy Lester's purpose for entering the home was to render medical aid (which the Plaintiff does not allege), the exigent circumstances exception does not appear to cleanse a warrantless entry. The need to aid Ms. Summers would spring from the alleged beating and excessive force used by Trooper Lindsey, whose alleged conduct would be a clear violation of Ms. Summer's Fourth Amendment rights. *See Est. of Armstrong ex rel. Armstrong v. Village of Pinehurst*, 810 F.3d 892, 909 (4th Cir. 2016) (a taser may be employed only if the officer is confronted with an "immediate safety risk and that is reasonably likely to be cured by using the taser"). Accordingly, the Plaintiff's allegations preclude the applicability of the exigent circumstances exception.

Lastly, the Defendant argues that even if Deputy Lester's alleged conduct amounts to a constitutional violation, there is no controlling law that clearly establishes the legality of "entering a home to retrieve an injured person therein and move them to a secure location." (Def. Br. at

---

[7] In the Defendant's citation to support the community caretaking function, the Defendant cites *Brigham City, Utah v. Stuart*, stating in a parenthetical that "One *exigency* obviating the requirement of a warrant is the need to assist the persons who are seriously injured or threatened with such injury." (Def. Br. at 11.) (Emphasis added). The Defendant also cites *Mincey v. Arizona*, 437 U.S. 385 for the same proposition. (*Id.*)

14

12). This argument reads the Plaintiff's allegations too broadly and implies that Deputy Lester had a purpose that the Plaintiff does not allege. The Plaintiff does not argue or allege that Deputy Lester entered to render medical aid or to "retrieve an injured person." Rather, the Plaintiff alleges that Deputy Lester's entry into her home was done with malice, for the purpose of further injuring her by dragging her out of her house and to a patrol car. The law is clear; absent exigent circumstances or consent, the police may not enter a home to effectuate an arrest without a warrant. *Payton vs. New York*, 445 U.S. 573 (1980); *Steagald vs. United States*, 451 U.S. 204 (1981). The face of Ms. Summers' complaint is devoid of any allegations amounting to consent, caretaking, or exigent circumstances. Thus, dismissal would be inappropriate pursuant to Rule 12(b)(6).

## CONCLUSION

Wherefore, after careful consideration, the Court **ORDERS** that *Defendants Summers County Commission, Summers County Sheriff's Department, and D.A. Lester's Motion to Dismiss* (Document 20) be **GRANTED IN PART AND DENIED IN PART**. The Court **ORDERS** that the *Motion* be **GRANTED**, without prejudice, as to all claims against Defendants Summers County Sheriff's Department and Summers County Commission, and **DENIED** as to Defendant D.A. Lester.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: October 31, 2022

*/s/ Irene C. Berger*
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA