IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CHARLES SUMMERS,

                Plaintiff,

v.                                         CIVIL ACTION NO.   2:22-cv-00148

WEST VIRGINIA DEPARTMENT
OF HOMELAND SECURITY, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *Defendant D.A. Lester's Motion for Summary Judgment* (Document 56), the *Memorandum in Support of Defendant D.A. Lester's Motion for Summary Judgment* (Document 57), the *Plaintiff's Response in Opposition to Defendant D.A. Lester's Motion for Summary Judgment* (Document 61), and the *Reply Memorandum in Support of Defendant D. A. Lester's Motion for Summary Judgment* (Document 65), as well as all attached exhibits. For the reasons stated herein, the Court finds that the motion should be denied.

**FACTS[1]**

The Plaintiff, Charlotte Summers, initiated this action with a *Complaint* (Document 1) filed on February 27, 2022. She named the West Virginia Department of Homeland Security (WVDHS), the West Virginia State Police (WVSP), and Trooper R. Lindsey of the West Virginia State Police as Defendants. Ms. Summers subsequently moved to amend to add parties, correct

---

1 The facts are recounted in the light most favorable to the Plaintiff as the non-moving party.

allegations in the wake of discovery, and make typographical corrections. The Court granted her motion, and she filed her *First Amended Complaint* (Document 13). In addition to the original three Defendants, Ms. Summers named the Summers County Commission, the Summers County Sheriff's Department, and D.A. Lester. The Court granted a motion to dismiss the Summers County Commission and the Summers County Sheriff's Department. Mr. Lester also moved to dismiss, contending that the First Amended Complaint, in which he was named as a Defendant for the first time, was filed after expiration of the statute of limitations. The Court denied the motion to dismiss, finding that it was not apparent on the face of the complaint that the claims would be time barred. The instant motion for summary judgment likewise asserts a statute of limitations defense. Ms. Summers died during the pendency of the litigation, and the Court entered an order on February 16, 2023 substituting Charles Summers, her son and representative of her estate, as Plaintiff.

The remaining claims are as follows: Count One – Unreasonable Search and Seizure in Violation of the Fourth Amendment of the U.S. Constitution Pursuant to 42 U.S.C. § 1983, as to Trooper Lindsey and Deputy Lester; Count II – Use of Excessive Force in Violation of the Fourth Amendment of the U.S. Constitution Pursuant to 42 U.S.C. §1983, as to Trooper Lindsey and Deputy Lester; Count III – Assault, as to Defendants WVDHS, WVSP, and Trooper Lindsey; Count IV – Battery, as to all (non-dismissed) Defendants; Count V – Negligent Hiring, as to Defendants WVHDS and WVSP; Count VI – Negligent Training, as to WVDHS and WVSP; and Count VII – Negligent Retention, as to WVDHS and WVSP.

Trooper Lindsey came to Ms. Summers' property on March 31, 2020, to arrest her son, David Summers, pursuant to an arrest warrant. He had secured Mr. Summers in his cruiser and

began driving away when Ms. Summers cursed at him and ordered him off her property. The Defendants contend that she threw a metal object that appeared to be a piece of an aluminum door frame in the direction of Trooper Lindsey, while Ms. Summers and David Summers deny that she threw an object. Ms. Summers was 75 years old and frail. Trooper Lindsey got out of the vehicle, followed her into her home and tased her in the back. She fell to the floor, suffering a broken nose and abrasions. He continued to tase her while she was on the ground and handcuffed her. Deputy Lester arrived on the scene and entered the home. Trooper Lindsey and Deputy Lester dragged Ms. Summers across concrete and gravel from her home to Deputy Lester's cruiser. Ms. Summers' injuries became infected, eventually requiring amputation of one leg. She died on January 7, 2023.

Ms. Summers' medical records indicate that she suffered dementia, beginning well before the 2020 incident, which rendered communication difficult at times. Her counsel took a sworn recorded statement from her on June 6, 2022, soon after the original complaint was filed, because of her increasing health problems. David Summers' sworn, recorded statement was taken on the same date. He was previously unavailable because he was incarcerated, and visitors were not permitted due to Covid-19 restrictions. He also suffers from substance abuse disorder, sometimes limiting his availability.

Ms. Summers described being tased and injured by Trooper Lindsey after her son David's arrest. She stated that after he tased her and broke her nose "[t]hey helped take – they dragged me out of my –out of my utility [room], off the floor, and dragged me through the gravel and out to the car that was back there by the house." (Charlotte Summers Statement, 11::20–23) (Document 61-3.) She recalled being dragged, and she recalled an ambulance arriving to take her

3

to the hospital. She did not recall deputies from the Sheriff's department responding or being present. She recalled an officer Elliott treating her kindly, removing the handcuffs, and taking her home after she was treated, although she did not have any memory of the treatment provided at the hospital.

In his June 6, 2022 statement, David Summers described the events of March 31, 2020. Trooper Lindsey arrived to arrest him and declined to allow him to speak to his mother before taking him to his police cruiser and beginning to drive away. He heard his mother come out and ask what was going on, and Trooper Lindsey ordered her back into the house. She refused and again asked what was going on, and Trooper Lindsey got out of his vehicle and walked back toward the house, following Ms. Summers. David Summers could no longer see them, but he heard the screen door open, then heard a pop or pow sound that he believes was the taser. Trooper Lindsey called for an ambulance, and the Sheriff and two other officers pulled in. David Summers observed them "dragging my mom through the concrete pad, the carport, of course, and all through the gravel, all the way to the vehicle," to put her in the sheriff's deputy's car. (David Summers Statement, 14::16–18) (Document 61-4.) He said that his mother appeared to be unconscious or semi-conscious. David Summers stated that he believed it was "Lindsey and Farmer, maybe, Deputy Farmer, or the other young guy that was there. I can't remember exactly which one." (*Id.* at 15::8–11.) That is consistent with his subsequent deposition testimony, in which he described observing Trooper Linsey and a sheriff's deputy dragging his mother out of the house and to the cruiser.

Stephanie Summers, who is married to Charlotte Summers' son Charles, gave a deposition on May 10, 2023 describing her previous conversations with Charlotte Summers about the incident. She had the following exchange with Deputy Lester's counsel:

> Q: And you gave us a little bit of information beforehand. Could you go in a little more detail of what she told you had happened to the best of your memory?
> A: She said that she was going in the house and the state trooper tased her and she landed on her – the laundry room, which her nose ended up being broke. And that shortly after he tased her, I guess she cussed them, but – and that that's when he jerked her up and dragged her across the gravels.
> Q: Did she say how many officers drug her across the gravel?
> A: Two.
> Q: And did she tell you what agencies the officers were from?
> A: One was a county, I think, and one was a state trooper.
> Q: Did she know the names of the officers at the time?
> A: I think she said something about Lindsey. I don't know which one that was. I think that was the state trooper. And the other one she told me, but I can't remember.
> Q: But she told – You don't remember what she told you, but you remember that she told you his name?
> A: Yes.

(Stephanie Summers Dep. at 42:14 – 43:16.)

In an affidavit, Stephanie Summers indicated that some of the information she provided during the deposition was based on her own knowledge, gained during the course of the lawsuit, rather than limited to her conversations with Charlotte. She also noted that Charlotte did not like to talk about the incident and would have been unlikely to tell her the names of the officers involved.

Deputy Lester testified that he responded to either a radio call from Trooper Lindsey requesting assistance or a dispatch call directing him to assist Trooper Lindsey at Ms. Summers' residence. He went to the residence after Trooper Lindsey had tased Ms. Summers and assisted

Trooper Lindsey in helping Ms. Summers stand up and walk to a vehicle by placing a hand under her right armpit and a hand in her hand. He indicated that she was not in handcuffs at the time, and she walked with the assistance of the officers. He stated that he did not recall seeing any injuries, blood, or abrasions on her face or legs, and he denied dragging her to the cruiser.

Although Ms. Summers was charged with obstructing and assault on a government official, she was never required to appear in court on those charges. Trooper Lindsey described the incident in a police report. His factual account differs in various respects from that of Ms. Summers and David Summers. His report notes that "Deputy Lester and Tpr. Lindsey escorted Mrs. Summers to Deputy Lester's patrol car." (Lindsey Rep. at 1) (Document 56-1.) The report notes that a deputy called EMS, and Trooper Ellison accompanied Ms. Summers to the hospital, but provides no description of her injuries or how she incurred those injuries. Photographs of Ms. Summers in the hospital reveal a cut across her nose, blood on her face, and bloody abrasions on her arm and legs.

## STANDARD OF REVIEW

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014). A "material fact" is a fact that could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). A "genuine issue" concerning

a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23. When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party. *Hoschar*, 739 F.3d at 169. However, the nonmoving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D. W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986). If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250. If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be

granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

**DISCUSSION**

Deputy Lester argues that he is entitled to summary judgment because the claims against him in the July 15, 2022 First Amended Complaint were filed more than two years after the March 31, 2020 incident. He contends that "the unrebutted evidence on the case record now shows that Mrs. Summers either knew, or reasonable efforts would have revealed, the alleged facts supporting Deputy Lester's involvement in this case at a time which would place the First Amended Complaint after the expiration of the statute of limitations." (Def.'s Mem. at 6.) He argues that Trooper Lindsey's Investigation Report stating that Deputy Lester helped "escort" Ms. Summers to the cruiser was publicly available, and her medical records and conversations indicate that she was aware that officers drug her across the driveway from the house to the cruiser. The Defendant relies heavily on Stephanie Summers' statement that she recalled Charlotte naming the deputy involved, though she did not recall the name mentioned, and argues that Stephanie's affidavit should be disregarded to the extent it conflicts with her deposition. In addition, Ms. Summers had regular contact with her son David, who observed the alleged dragging. In combination, Deputy Lester contends that there was sufficient information to place her on notice of her claims.

The Plaintiff notes that Ms. Summers' dementia and other health concerns limited communication. He contends that David Summers' June 6, 2022 statement describing a young deputy sheriff, together with Trooper Lindsey, dragging his mother across gravel and concrete to the cruiser, in combination with Trooper Lindsey's report stating that Deputy Lester and Trooper Lindsey "escorted" her to the car, first provided a basis to name Deputy Lester as a defendant.

8

The Plaintiff further argues that Stephanie Summers' testimony regarding a conversation with Charlotte Summers is inadmissible hearsay and was misconstrued by the Defendant. The Plaintiff emphasizes that Charlotte Summers does not identify Deputy Lester by name anywhere in the record, and there is no evidence that she, David Summers, or other family members were aware of his identity until after counsel was able to combine the information from David Summers and from Trooper Lindsey's report.

Under the Federal Rules of Civil Procedure, a statute of limitations defense is an affirmative defense and "the burden of establishing an affirmative defense rests on the defendant." *Goodman v. PraxAir, Inc.*, 494 F.3d 458, 464 (4th Cir.2007). Although the applicable state statute of limitations supplies the length of the limitations period in a § 1983 action, the time of accrual of the cause of action is a matter of federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). "Under those principles, it is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action." *Id.* In short, the statute of limitations clock starts when the plaintiff knows or has reason to know upon reasonable inquiry "that he has been hurt and who inflicted the injury." *Nasim v. Warden, Md. House of Correction*, 64 F.3d 951, 955 (4th Cir.1995) (en banc), cert. denied, 516 U.S. 1177 (1996).

State law tolling rules may be applicable to both the federal and state law claims. *Wallace*, 548 U.S. at 394. In West Virginia, a statute of limitations may be tolled based on the discovery rule, equitable tolling, and equitable estoppel. *Bishop v. W. Virginia Reg'l Jail & Corr. Facility Auth.*, No. 2:17-CV-03064, 2018 WL 1513294, at *3–4 (S.D.W. Va. Mar. 26, 2018) (Johnston, C.J.). Under the discovery rule, the statute of limitations does not begin to run until a claimant knows, or should know through the exercise of reasonable diligence:

> (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of the entity has a causal relation to the injury.

*Dunn v. Rockwell*, 689 S.E.2d 255, 265 (W. Va. 2009). "The plaintiff is charged with knowledge of the factual, rather than the legal, basis for the action. This objective test focuses upon whether a reasonable prudent person would have known, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action." *Id*. If the discovery rule is not applicable, courts or juries must "determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action," which tolls the statute of limitation. *Id.* "Equitable tolling focuses on a plaintiff's excusable ignorance of the statute of limitations and the lack of prejudice to the defendant," and is available only if "a defendant's wrongful conduct or…extraordinary circumstances beyond a plaintiff's control made it impossible for the plaintiff to file his or her claims on time." *Bishop*, 2018 WL 1513294, at *4.

There is no evidence in the record that Ms. Summers was aware that Deputy Lester contributed to her injuries by dragging her across concrete and gravel until her attorney combined evidence from various sources. She stated that she did not recall sheriff's deputies responding to the scene at all. Even if admissible, Stephanie Summers' uncertain recollection that Ms. Summers had told her the names of both officers who dragged her from her home does little to support Deputy Lester's statute of limitations defense, since Stephanie did not recall any name Ms. Summers may have given her. Ms. Summers' level of awareness is a subject of factual dispute between the parties. Her son testified that she appeared to be unconscious or semi-conscious when she was dragged to the cruiser, and her medical records reflect a dementia diagnosis dating from at least 2016. Her daughter-in-law testified that generally she could recall events and

10

communicate, and medical records from her hospital visit on March 31, 2020, indicate that she was alert, although some time passed between her being tased and dragged and her arrival at the hospital. She also suffered an infection that led to the amputation of her leg nine days after the incident, and it is not clear how long it took for her to be capable of "exercising reasonable diligence" to investigate a potential claim. David Summers witnessed Trooper Lindsey and Deputy Lester dragging his mother from her home but did not know Deputy Lester's identity and was incarcerated, with limited communication or visits as a result of Covid-19 restrictions. The Court addressed Trooper Lindsey's report in resolving the motion to dismiss, and again finds that the statement that he and Deputy Lester "escorted" Ms. Summers to a patrol car does not place the Plaintiff on notice that Deputy Lester acted in violation of her rights.

  A jury resolving factual disputes in the Plaintiff's favor could conclude that Ms. Summers, and subsequently Charles Summers as representative of her estate, acted with reasonable diligence and did not discover the elements of a cause of action as to Deputy Lester until June 2022. There are factual disputes surrounding what Ms. Summers knew in the immediate aftermath of the incident. In addition, reasonable minds could differ as to whether a reasonably prudent person should "have undertaken a further investigation." *Chesapeake Bay Found., Inc. v. Weyerhaeuser Co.*, 580 F. App'x 203, 207 (4th Cir. 2014) (internal citations omitted) (finding summary judgment on a statute of limitations defense inappropriate where factual disputes existed requiring creditability determinations and judgment by the factfinder). Thus, genuine disputes of material fact preclude summary judgment. Deputy Lester has not met his burden of establishing that he is entitled to judgment as a matter of law, and his motion for summary judgment should, therefore, be denied.

**CONCLUSION**

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that *Defendant D.A. Lester's Motion for Summary Judgment* (Document 56) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: September 20, 2023

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA